**Miguel ARANDA, Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA and Lumbermens Mutual Casualty Company, Appellees.**

**No. C14–90–00897–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 21, 1992.

Rehearing Denied June 18, 1992.

Karen A. Lerner, Michael B. Charlton, Houston, for appellant.

Kurt Groten, Howard R. King, Carla Bennett, Houston, for appellees.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## MAJORITY OPINION

ROBERTSON, Justice.

Miguel Aranda appeals from two trial court orders granting appellees' motions for summary judgment and an order denying his motion for summary judgment. Appellant brings four points of error claiming the trial court erred in granting appellees' motions for summary judgment on the basis of estoppel and ERISA preemption, in overruling appellant's motion for summary judgment, and in refusing to order evidence of one appellee's net worth. Because we hold the trial court erred in ren-

dering summary judgment in favor of appellees, we reverse and remand.

Appellant worked full-time for AMF Tuboscope and part-time for Uni–Mineral. The worker's compensation carrier for AMF Tuboscope was appellee, Insurance Company of North America (INA), and the carrier for Uni–Mineral was appellee, Lumbermens Mutual Casualty Company. On March 15, 1982, appellant began to experience symptoms of a repetitious traumatic injury to his wrists that he claimed resulted from activities performed for both employers. On March 26, 1982, Aranda saw a doctor for his symptoms and was diagnosed with acute bilateral carpal tunnel syndrome.

On April 19, 1982, appellant filed a claim for worker's compensation benefits with the Industrial Accident Board, indicating AMF Tuboscope as his employer. Appellant then filed a second claim naming Uni–Mineral as his employer. The Industrial Accident Board entered a Board award recommending joint payment of worker's compensation benefits to appellant by INA and Lumbermens. Appellant then entered into a Compromise Settlement Agreement with INA and Lumbermens. This agreement was not timely filed with the Industrial Accident Board. Allegedly to extend time for the Board to approve this agreement, appellee INA filed an appeal of the Board award on September 3, 1982. On September 17, 1982, the Board approved the Compromise Settlement Agreement. The trial court entered an agreed final judgment incorporating certain provisions of the agreement on January 21, 1983.

Appellant then filed the instant suit alleging that INA and Lumbermens negligently and intentionally breached their common law duty of good faith and fair dealing. INA and Lumbermens both filed motions for summary judgment based on estoppel and ERISA preemption. Appellant also filed a motion for summary judgment asserting that he had established his bad faith cause of action as a matter of law. The court overruled appellant's motion and granted the motions of INA and Lumbermens.

Appellant's first three points of error challenge the trial court's denial of his motion for summary judgment and its grant of summary judgment to appellees. A trial court properly grants summary judgment where the movant establishes that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). In reviewing the grant of summary judgment, we must consider only the evidence favoring the non-movant, disregarding evidence to the contrary. *Id.* at 549.

In point of error one, appellant claims the trial court erred in granting both motions for summary judgment on the basis of estoppel. Appellees moved for summary judgment on the ground that appellant was estopped from claiming appellees breached the duty of good faith and fair dealing because appellant signed the Compromise Settlement Agreement which contained the following language:

> The undersigned agree that the liability of the above insurance company or self insured or the extent of the injury is uncertain, indefinite or incapable of being satisfactorily established....

Appellees cited *Izaguirre v. Texas Employers Ins. Ass'n,* 749 S.W.2d 550, 555 (Tex.App.—Corpus Christi 1988, writ denied) as authority in their motion. On appeal, appellees also cite *Price v. Texas Employers' Ins. Ass'n,* 782 S.W.2d 938 (Tex. App.—Tyler 1989, no writ), and *Torchia v. Aetna Cas. & Sur. Co.,* 804 S.W.2d 219 (Tex.App.—El Paso 1991, writ denied).

In *Price,* the worker's compensation claimant signed and filed with the court a release evidencing a settlement agreement, the agreement was approved in court, and an agreed judgment was rendered by the trial court which contained the following language:

> The court having heard evidence thereon, is of the opinion that the liability of Defendant as well as the extent of alleged injury are *indefinite, uncertain and incapable of being satisfactorily established....*

782 S.W.2d at 939. In her subsequent suit against the insurers for breach of the duty of good faith and fair dealing, the court held that collateral estoppel barred the suit because the issue whether the insurer had a reasonable basis for denying or delaying payment of benefits had been decided in the prior suit. *Id.* at 941. *See also Coleman v. Lumbermens Mut. Cas. Co.*, 786 S.W.2d 445, 448 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (holding that the opinions or reasons given by the judge in the judgment, to the effect that the insurer's liability is uncertain, indefinite and incapable of being satisfactorily established, are not part of the judgment and that absent actual litigation of this issue in the prior proceeding, collateral estoppel would not preclude insured from bringing subsequent bad faith claim).

 *Price* only addresses the doctrine of collateral estoppel, a defense not raised in appellees' motions for summary judgment. We may not consider as grounds for reversal any issue not raised in the motions or responses to the motions for summary judgment. TEX.R.CIV.P. 166a(c). Because appellees did not raise the issue of collateral estoppel in their motions,[1] we need not consider the *Price* case.

In *Izaguirre*, several worker's compensation claimants filed suit against the insurer for breach of the duty of good faith and fair dealing. 749 S.W.2d at 552. The insurer moved for summary judgment attaching as exhibits to its motion certain documents filed in a prior proceeding (appealing the IAB award), including the claimants' petitions, releases and settlement agreements, affidavits, and the IAB awards. *Id.* at 555. The court granted summary judgment and the claimants appealed. *Id.* at 552. The appellate court noted that two of the claimants signed releases stating:

> I understand and agree that the liability of said insurance carrier is indefinite, uncertain and incapable of being satisfactorily established....

*Id.* at 555. Reasoning that a party's allegations or admissions in a former proceeding under oath judicially estop the party from making contrary assertions in a subsequent proceeding, the court held that, as a matter of law, the claimants who signed and filed the releases could not thereafter claim a breach of duty by the carrier. *Id.* Although the court does not specifically state that the releases filed in the prior proceeding were sworn, we must presume they were sworn or judicial estoppel would not have applied. *See Smith v. American Economy Ins. Co.*, 794 S.W.2d 574, 577 (Tex.App.—Fort Worth 1990, writ denied) (holding judicial estoppel inapplicable where record revealed no legal pleadings signed by the claimant under oath asserting a position contrary to the one asserted in the instant case), *cert. denied*, —— U.S. ——, 112 S.Ct. 374, 116 L.Ed.2d 326 (1991); *Washburn v. Associated Indem. Corp.*, 721 S.W.2d 928, 932 (Tex.App.—Dallas 1986) (holding judicial estoppel inapplicable because the claimant did not contend the carrier alleged or admitted in pleadings in a former proceeding under oath contrary to any assertion made in the present case), *writ ref'd n.r.e.*, 735 S.W.2d 243 (Tex.1987).

In *Torchia*, the claimant and the insurer agreed on a settlement of all claims. 804 S.W.2d at 221. The trial court rendered judgment on the settlement and the claimant executed an affidavit stating that the

---

1. Even if we could say appellees alleged sufficient facts to raise the issue of collateral estoppel, we could not uphold the summary judgment on this ground. Collateral estoppel precludes relitigation of identical issues of facts or law actually litigated and essential to the judgment in the prior suit. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984); *Torchia*, 804 S.W.2d at 223; *National Union Fire Ins. Co. v. Dominguez*, 793 S.W.2d 66, 71 (Tex.App.—El Paso 1990, writ denied); *Coleman*, 786 S.W.2d at 448. A final judgment agreed to by the parties serves as an estoppel only as to those facts actually and necessarily decided. *Torchia*, 804 S.W.2d at 223; *Dominguez*, 793 S.W.2d at 71. Where the judgment indicates that the trial court heard evidence and actually decided that the liability of the carrier was uncertain, the "actual litigation" requirement is met. *See Torchia*, 804 S.W.2d at 222–24; *Dominguez*, 793 S.W.2d at 71. Here, the agreed judgment contains no recitation that the trial court heard evidence. Thus, the record fails to show that appellees' liability was actually litigated. *See Dominguez*, 793 S.W.2d at 71.

"liability of the cross-defendant is uncertain." *Id.* at 222. Because of this sworn affidavit, the court held the claimant was judicially estopped from taking a position contrary to the statements in that affidavit. *Id.* at 224. Furthermore, the court found collateral estoppel applicable because the prior case had decided that the insurer's liability was uncertain. *Id.* at 223. Thus, the court upheld the summary judgment granted in favor of the insurer. *Id.* at 226.

 Appellees contend the doctrine of judicial estoppel precludes appellant from claiming breach of the duty of good faith and fair dealing because he signed the Compromise Settlement Agreement containing language that the liability of appellees was uncertain and indefinite. To invoke the doctrine of judicial estoppel, there must be an allegation or an admission by appellant in a former proceeding under oath contrary to the assertion sought to be made. *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292, 295 (1956); *Izaguirre*, 749 S.W.2d at 555. Appellant argues on appeal that judicial estoppel is inapplicable here because the language in the Compromise Settlement Agreement was not a statement made under oath. Appellant did not raise this argument in his response to the motions for summary judgment. Rather, appellant argued in his response that judicial estoppel was inapplicable because the prior statement in the Compromise Settlement Agreement was invalid. Appellant contended the agreement was invalid on the basis of repudiation by appellant and by INA in filing suit to set aside the IAB award. Furthermore, appellant claimed the agreement was void once the district court acquired jurisdiction in the suit to set aside the award.

Although Rule 166a(c) provides that we may only consider as grounds for reversal issues expressly presented to the trial court in the motion for summary judgment or in the response, we may address the question whether the agreement was under oath because this is an element of appellees' defense. If appellees failed to establish they were entitled to judgment as a

matter of law under the doctrine of judicial estoppel, we must reverse the orders granting appellees' motions.

The record contains the pleadings, affidavits, and other documents filed with the trial court in the prior proceeding in which INA appealed the IAB award. Among these documents is a copy of the Compromise Settlement Agreement. This agreement, which contains appellant's signature, includes the statement that the "undersigned agree that the liability of the above insurance company or self insured or the extent of the injury is uncertain, indefinite or incapable of being satisfactorily established." This document was not signed under oath. Aranda's sworn affidavit references this settlement agreement as follows:

Through my attorney, I have been able to negotiate a complete and final settlement and compromise of this claim, which settlement and compromise is entirely satisfactory to me.

Following this sentence, Aranda sets out the payment terms of the settlement which are identical to those in the Compromise Settlement Agreement. The affidavit, however, does not contain the assertion that Aranda agrees that the liability of the carriers is uncertain or indefinite.

Because the Compromise Settlement Agreement is the only document containing the statement that the liability of the carriers is uncertain and indefinite and this document was not signed or admitted under oath in the prior proceeding, we hold that judicial estoppel is inapplicable. *See Smith*, 794 S.W.2d at 577. In its motion for summary judgment, INA relied only on *Izaguirre*, arguing that appellant's bad faith claim, like that in *Izaguirre*, should be barred as a matter of law. Because *Izaguirre* concerns only judicial estoppel, which we have held is inapplicable to the facts of this case, the trial court erred in granting INA's motion for summary judgment.

 In its motion for summary judgment, Lumbermens cited only the *Izaguirre* case. In discussing this case, however, Lumbermens misinterpreted the basis

for the *Izaguirre* holding and argued that Aranda should be equitably estopped from raising its bad faith claim. *Izaguirre* does not involve equitable estoppel. The doctrine of judicial estoppel, applied in *Izaguirre*, is distinguishable from equitable estoppel "based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present." *Washburn*, 721 S.W.2d at 932 (citing *Long v. Knox*, 291 S.W.2d 292, 295 (Tex.1956)). Even if we were to hold that Lumbermens raised the defense of equitable estoppel in misinterpreting *Izaguirre*, this would not support the trial court's grant of summary judgment. Equitable estoppel occurs if a party has taken a prior inconsistent judicial position and the opposing party relied on the asserted inconsistency and suffered injury as a result of this reliance. *See Washburn*, 721 S.W.2d at 932. Lumbermens failed to argue or offer any summary judgment proof of detrimental reliance. Thus, the summary judgment in favor of Lumbermens is insupportable under either judicial estoppel or equitable estoppel. We sustain point of error one.

In point of error two, appellant claims the trial court erred in granting summary judgment on the basis of ERISA preemption. In addition to urging judicial estoppel, INA filed a supplemental motion for summary judgment on the ground of ERISA preemption. Because the order granting INA's motion for summary judgment does not specify which motion was granted or whether both were granted, we must address this alternative ground for the judgment.

■ Case law holds that ERISA does not preempt cases such as the one at bar. In *Smith v. American Economy Insurance Company*, 794 S.W.2d 574 (Tex.App.—Fort Worth 1990, writ denied), *cert. denied,* —— U.S. ——, 112 S.Ct. 374, 116 L.Ed.2d 326 (1991), the appellants sued to set aside a worker's compensation Compromise Settlement Agreement on the grounds of misrepresentation and breach of the duty of good faith and fair dealing. *Id.* at 575–76. The trial court granted appellees' motion for

summary judgment that asserted appellant's suit was barred on the grounds of ERISA preemption and judicial estoppel. *Id.* at 576. The appellate court noted that ERISA specifically excepts from coverage a state worker's compensation plan if " 'such [a] plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws; ...'." *Id.* (quoting 29 U.S.C. § 1003(b)(3)). Because ERISA expressly forbids removal of worker's compensation cases from state court, the *Smith* court held that ERISA does not preempt misrepresentation and bad faith claims asserted by the appellant. *Id.* at 577. We find *Smith* applicable to the instant case. Therefore, we hold the trial court erred to the extent it granted summary judgment in favor of INA on the ground of ERISA preemption, if this was in fact a basis for the judgment. We sustain point of error two.

■ In point of error three, appellant claims the trial court erred in overruling his motion for summary judgment. Appellant contends the trial court erred because appellees failed to file adequate responses to appellant's motion and because appellant demonstrated that it was entitled to judgment as a matter of law on its claim of breach of the duty of good faith and fair dealing. Because we have held the trial court erred in granting summary judgment in favor of appellees, we must determine whether the trial court should have granted summary judgment in favor of appellant.

Appellant first attacks the adequacy of appellees' responses to his motion. Whether or not appellees offered adequate responses to appellant's motion, appellant has the burden of negating the existence of any material fact issues and of establishing that he is entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548. In deciding whether there is a disputed material fact issue precluding summary judgment, we must accept as true all evidence favorable to the non-movant. *Id.* at 549. Furthermore, we must indulge every reasonable inference from the evidence and

resolve all doubts in favor of the non-movant. *Id.* We will not consider evidence favoring the movant's position unless it is uncontroverted. *Great American Reserve Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Issues not expressly presented to the trial court by written motion or response shall not be considered on appeal as grounds for reversal. TEX.R.CIV.P. 166a(c).

In his motion for summary judgment, appellant contended appellees were liable for denying payment of benefits to appellant under the theories of breach of fiduciary duty, violation of statutory duties, and breach of the duty of good faith and fair dealing. As to fiduciary duty, appellant alleged that one of INA's employees admitted in deposition that INA owed appellant a fiduciary duty. Based on this admission and facts allegedly showing breach of this duty, appellant contended he was entitled to summary judgment. We disagree.

The summary judgment proof included Aranda's affidavit, an affidavit by Margaret Maisel, an attorney, the claim files of INA and Lumbermens, Aranda's deposition, certified copies of the IAB records, and appellees' responses to requests for admissions. Appellant also claims the depositions of Gerald Stockbridge and Hazel Bolden were before the trial court; however, the record shows that these depositions were not filed until after the court considered appellant's motion. Thus, we may not consider these depositions as part of the summary judgment proof. Because the alleged admission of the existence of a fiduciary duty owed to appellant was in one of the depositions which we have held was not part of the summary judgment proof, appellant has failed to establish the existence of a fiduciary duty.

Appellant also argued appellees were liable based on their alleged violations of statutory duties and the common law duty of good faith and fair dealing. Appellant first contends that TEX.REV.CIV.STAT.ANN. art. 8306, §§ 7, 18 & art. 8307, § 5c require a carrier to pay compensation as it accrues on a weekly basis to any person that is entitled and to furnish medical services as needed. Appellant also contends appellees breached the duty of good faith and fair dealing by refusing to pay or by delaying payment of appellant's claim. To establish breach of this duty, appellant must establish: (1) the lack of a reasonable basis for denying or delaying payment of the policy benefits; and (2) that the carrier knew or should have known that there was no reasonable basis for denying the claim or delaying payment of the claim. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 213 (Tex.1988). Because we find the issues of breach of these statutory and common law duties similar, we address them together.

The summary judgment proof establishes the following facts: Aranda first began experiencing problems with his hands on March 15, 1982 and first missed work because of this problem on March 26, 1982. At this time, Aranda was employed by AMF Tuboscope and Uni–Minerals. Aranda had worked for AMF on a full-time basis approximately three weeks when the injury occurred. Aranda had worked for Uni–Minerals on a part-time basis since January 1982. At Uni–Minerals, Aranda lifted and stacked 100 lb. bags. At AMF, Aranda painted pipes, used a wrench to remove the metal ends of pipes, and pushed a metal piece through the pipes to ensure the absence of dents or flaws.

On March 26, 1982, Aranda was diagnosed with acute bilateral carpal tunnel syndrome. Because Aranda's physician believed this was caused by a repetitious traumatic injury that could be job-related, Aranda sought worker's compensation benefits. The carriers for both employers controverted the claim and denied payment. The documentation shows that the carriers controverted the claim because of questions as to whether one or both employers were responsible for the injury. At the time Aranda first manifested symptoms, he had been working for Uni–Minerals more than two months and this job involved much lifting of heavy objects. Aranda did not exhibit these symptoms, however, until three weeks after he began working for AMF on a full-time basis. At AMF, Aranda's job involved tasks that also affect the

wrist. The carriers not only questioned which job caused the injury, but also disagreed on the amount of responsibility each carrier would bear if both were liable. Because Aranda was only a part-time employee of Uni–Minerals, Lumbermens argued that they should bear less responsibility for payment of benefits than INA, the carrier for Aranda's full-time employer.

In June 1982, the IAB held a pre-hearing conference. Based on the results of this conference, the Pre–Hearing Officer recommended a finding of 50% liability against each carrier, that Aranda sustained or will sustain 8²⁄₇ weeks of total temporary disability, that Aranda suffered an injury to both hands resulting in a 15% permanent loss, that on the date of injury Aranda had an average weekly wage of $375.00 producing a compensation rate of $154.00, and that hardship would exist if an award was not entered in a lump sum payment. All parties disputed these recommendations. Lumbermens denied the injury was in the course and scope of Aranda's employment, claimed no evidence supported the amount of Aranda's weekly wage, denied the length of total temporary disability, denied injury to both hands resulting in a 15% loss, and denied a hardship would result if there was no lump sum payment. INA claimed there was insufficient evidence to show an injury or the amount of Aranda's average weekly wage, denied a 15% loss, claimed no proof of hardship, and questioned the amount of lost time. Aranda denied that he had been released to work yet, and contended that the medical records supported a finding of more than a 15% loss.

In July, the IAB held a hearing and on August 3, 1982, the Board issued an award incorporating the Pre-Hearing Officer's recommendations and awarding Aranda a lump sum of $7,222.73, a 25% attorney's fee, expenses of $15.00, and ordered joint payment by INA and Lumbermens of the award and of other named medical expenses. On August 17, 1982, the parties entered a Compromise Settlement Agreement whereby the carriers would pay Aranda $2,611.36, in addition to $1,000.00 previously paid, and that the carriers would jointly pay Aranda's past medical expenses and those to be incurred in the six months following the date of the agreement. The time limit expired before the IAB approved this agreement and INA filed suit in September to set aside the IAB award, ostensibly to extend time for the IAB to approve the settlement agreement and to allow the parties to obtain a judgment based on this agreement.

Although the summary judgment proof shows that the carriers knew of Aranda's medical condition, sufficient questions existed regarding whether one or both jobs caused the condition, and if both jobs caused the condition, the amount of proportionate liability each carrier should bear. Thus, in our opinion, the summary judgment proof fails to negate the existence of genuine issues of material fact regarding whether the carriers had a reasonable basis for denying or delaying payment. Because the summary judgment proof does not establish that Aranda was entitled to judgment as a matter of law on his claims of violation of statutory duties to pay compensation or on his claim of breach of the duty of good faith and fair dealing, the trial court properly denied Aranda's motion. We overrule point of error three.

In point of error four, appellant challenges the trial court's refusal to order appellees to provide appellant with evidence of their net worth. On appeal from the grant of summary judgment, the only issue is "whether the summary judgment proof establishes as a matter of law that there is no genuine issue of a material fact as to one or more of the essential elements of the plaintiff's cause of action." *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Whether or not the trial court erred in refusing to order the production of evidence of appellees' net worth is not relevant to the entry of summary judgment. Therefore, we need not address point four.

Because the trial court erred in granting summary judgment in favor of INA and Lumbermens, we reverse the judgment and remand the cause for trial.

SEARS, Justice, dissenting.

I respectfully dissent from the majority opinion. In reversing the trial court's summary judgment, the majority is rewarding appellant for his bad faith and devious actions, and it is penalizing the appellees for attempting to settle this matter in good faith. Paramount to a determination of this appeal is the fact that the appellant worked for two employers, each covered with worker's compensation insurance, and he has been diagnosed with acute bilateral carpal tunnel syndrome. Because this condition develops over a period of time, as opposed to a single identifiable injury, the appellant had been unable to show which employment caused his injury. Therefore, appellant has never been able to show which insurance carrier is responsible for the payment of benefits in connection with his injury.

The majority opinion has lost sight of the broad concept of estoppel, and the reasons for its existence. Since 1868, Texas courts have held that one cannot by his speech or conduct induce another to act in a particular way and then adopt a subsequent inconsistent position, attitude or course of conduct which causes a loss or injury to the other party.[1] Said another way, one cannot by his language or conduct lead another to do something that he would not otherwise have done, and then cause loss or injury to the other by changing the position upon which the second party acted.[2] The Compromise Settlement Agreement (CSA) executed by the appellant stated in clear and unambiguous language that "liability was indefinite, uncertain and incapable of being satisfactorily established." Appellant then entered into a settlement agreement in the district court for the exact benefits as expressed in the CSA, and acknowledged that this was a settlement of his claim against the appellees. Further, by deposition, appellant swore that he had read the CSA, discussed it with his attorney who had also read the CSA, agreed with the terms and conditions of the CSA, and swore that he executed it in order to

receive the benefits flowing from the agreement. Likewise, the appellant accepted the benefits flowing from the settlement agreement in the district court. By his words and deeds, the appellant has clearly induced the appellees to enter into a settlement agreement and payment and he now wishes to take a contrary position: i.e.; by his subsequent lawsuit appellant is contending that the liability was *not* indefinite, uncertain and incapable of being satisfactorily established. This is a classic example of the need in law for estoppel.

Estoppel, by its very nature, is an equitable remedy and its purpose is to prohibit inconsistency and prevent fraud which will result in injustice. *Kuehne v. Denson*, 148 Tex. 54, 219 S.W.2d 1006 (1949); *Hubacek v. Manufacturer's Casualty Ins. Co.*, 247 S.W.2d 173 (Tex.Civ.App.—Waco 1952, writ ref'd n.r.e.). Estoppel is a tool that is totally defensive in character and its design is to protect those who have been misled from suffering a loss due to the attempts of others to take positions which are inconsistent. In fact, the Doctrine of Equitable Estoppel is founded upon the principles of morality and fair dealing, and estoppel is intended to subserve the ends of justice. *Smith v. Chipley*, 24 S.W.2d 87 (Tex.Civ.App.—Amarillo 1928, no writ). Further, the proper function of equitable estoppel is the prevention of fraud, whether it be actual or constructive. *Richey v. Miller*, 142 Tex. 274, 177 S.W.2d 255 (1944). In applying the broad concept of estoppel to a judicial proceeding, the general principle is applied against the party who assumes and maintains a certain position in one judicial proceeding, and attempts to adopt a contrary position in a subsequent proceeding. *Smith v. Chipley*, 42 S.W.2d 645, (Tex.Civ.App.—Amarillo 1931, writ ref'd.).

Appellant is correct in stating that the CSA can not be enforced once the appeal is filed in a district court. However, that applies to the benefits to be awarded under the CSA. I know of no tool or procedure at law or in equity that would allow the appel-

---

1. *Portis v. Hill*, 30 Tex. 529 (1868).

2. *Booty v. O'Connor*, 287 S.W. 282 (Tex.Civ. App.—Galveston 1926, writ ref'd).

lant to erase his acknowledgment that the liability of the appellees was "indefinite, uncertain and incapable of being satisfactorily established." In his deposition, which is part of the summary judgment proof, appellant acknowledges that both he and his attorney signed the CSA after discussing the agreement with his attorney. In *Izaguirre,* the worker's compensation claimant's signed releases contained the same language as the CSA agreement signed by the appellant, i.e. "I understand and agree that the liability of said insurance carrier is indefinite, uncertain, and incapable of being satisfactory established ..." These claimants were precluded from subsequently claiming a breach of duty by the insurance carriers as a matter of law. *Izaguirre v. Texas Employers' Ins. Ass'n,* 749 S.W.2d at 555. From an equitable standpoint, there should be no distinction made between the *Izaguirre* claimant's acknowledgment of certain facts, and the written statement and acknowledgment by this appellant in the CSA and deposition. The fact that appellant's written acknowledgment was not in a release should not make it any less binding upon him than the acknowledgment in the *Izaguirre* case.

The majority opinion takes the position that his acknowledgment of the operable facts is not enforceable against the appellant because it was not sworn to by appellant. However, the written acknowledgment was not only signed by the appellant, but in deposition testimony in subsequent proceedings he acknowledged that he had signed it and had agreed with it. I cannot follow the majority's reasoning that estoppel does not apply in this situation simply because the statement was not made under oath. The fact that it was a written *acknowledgment of a fact,* signed by the appellant, and subsequently testified to and acknowledged by the appellant in sworn deposition testimony, should be sufficient to evoke the protections afforded by estoppel. This is a classic example of a person, making a statement in order to receive benefits from another, receiving benefits based upon those statements and then attempting to take a contrary position in a subsequent law suit. This clearly fits the classic concept of estoppel as being an equitable tool to prevent a person who has induced another to act in a particular manner from adopting an inconsistent position in subsequent litigation.

I find nothing in the majority opinion or in Texas case law that will prevent the affirmance of the trial court's summary judgment based upon equitable estoppel. The distinction between judicial estoppel and equitable estoppel is that equitable estoppel requires reliance and injury. Also, equitable estoppel applies only in favor of the parties who are in privity with them, where judicial estoppel may be evoked by a stranger to the former proceeding. *Swilley v. McCain,* 374 S.W.2d 871 (Tex.1964), rev'd on other grounds. The majority opinion also seems to take the position that the appellees did not specifically plead equitable estoppel. However, it has long been held that if a matter constituting the estoppel is apparent on the face of the pleadings, estoppel need not be specifically plead. *Shaw v. Borchers,* 46 S.W.2d 967 (Tex.Comm'n App.1932). This record is very clear and uncontroverted on the operative facts.

It is well settled in Texas law that pleadings in other actions which contain statements inconsistent with the parties present position are receivable as *admissions. St. Paul Fire & Marine Ins. Co. v. Murphree,* 163 Tex. 534, 357 S.W.2d 744, 747 (1962). Also, a judicial admission not only relieves the adverse party from making proof of the fact admitted, but it bars the person who made it from disputing it. *Gevinson v. Manhattan Constr. Co. of Oklahoma,* 449 S.W.2d 458, 466 (Tex.1969). A proceeding before the IAB is a judicial proceeding. *Washburn v. Associated Indem. Corp.,* 721 S.W.2d 928, 933 (Tex.App.—Dallas 1986), *writ ref'd n.r.e.,* 735 S.W.2d 243 (Tex.1987). Therefore, a position taken before the IAB that is inconsistent with the position taken in a subsequent judicial proceeding subjects the party to judicial estoppel. *Washburn,* 721 S.W.2d at 933.

A plaintiff who takes one position before the IAB in order to receive benefits is precluded from taking an inconsistent posi-

tion in a subsequent law suit. *Moore v. Means*, 549 S.W.2d 417 (Tex.Civ.App.— Beaumont 1977, writ ref'd n.r.e.). Moore took the position before the IAB that his injuries were caused by a fellow worker in the course of employment and at the work site of the employer. Moore later filed a law suit against the fellow worker alleging the assault was not in the course of employment. The trial court granted the defendant worker summary judgment. The court of appeals affirmed without going into the subtle distinctions of the various forms of estoppel or whether it was under oath. The court simply held: "where one takes one position in a judicial proceeding, he cannot later take a plainly inconsistent position in another proceeding." *Id.* at 419.

When the owners of a residence destroyed by fire sued one insurance company under the fire insurance policy, and sued a mortgage management firm for negligence in failing to provide insurance, they were estopped from making the second, inconsistent claim. The Texas Supreme Court held:

> If one having a right to pursue one of several inconsistent remedies makes his election, institutes suit, and prosecutes to a final judgment, or receives anything of value under the claim thus asserted, or if the other party has been affected adversely, such election constitutes an estoppel thereafter to pursue another and inconsistent remedy.

*Lomas & Nettleton Co. v. Huckabee*, 558 S.W.2d 863 (Tex.1977) (quoting *Seamans Oil Co. v. Guy*, 115 Tex. 93, 276 S.W. 424 (1925).

Although the *Huckabee* opinion has been criticized in subsequent opinions,[3] the criticism is against an over-broad application of the principle, and the consensus is that estoppel should not apply unless the positions taken or admissions made are truly inconsistent with a later position, or the party knowingly made an election. In the case at hand, appellant and his attorney very clearly and knowingly admitted the

uncertainty of the liability of the insurance carriers in order to get them to settle the case and pay the claims. This is truly inconsistent with a claim of bad faith, and was not necessary for a successful prosecution of his claim for benefits. Even while criticizing, *Huckabee* for improper application of estoppel, the Supreme Court held:

> Even though the inconsistent position may not fit the mold of a better defined principle, an election will bar recovery when the *inconsistency in the assertion of a* remedy, right, or *state of facts* is so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust. (emphasis added)

*Bocanegra*, 605 S.W.2d at 851. In situations such as this, equitable estoppel serves as a tool to "frustrate skullduggery." *Id.*

Therefore, the election doctrine bars subsequent litigation when: 1) one successfully exercises an informed choice; 2) between two or more remedies, rights or *states of facts;* 3) which are so inconsistent as to; 4) constitute manifest injustice. *See Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas*, 491 S.W.2d 869, 871 (Tex.1973). The summary judgment proof shows that appellant and his attorney signed the CSA acknowledging a certain *state of facts*, i.e.: that the liability of appellees was "indefinite, uncertain and incapable of being satisfactorily established." Further, appellee testified that he signed the CSA after consulting with his attorney; therefore, the choice was informed. Appellant received benefits by inducing the appellee in the district court lawsuit to agree to pay and to pay the exact amounts set out by the CSA, based on appellant's acknowledgment of the *state of the facts*. A bad faith claim against an insurer must allege that the insurer denied the underlying claim or delayed payment when it had no reasonable basis for doing so, or without determining whether it had a reasonable basis for the denial or delay. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d

---

3. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 855 (Tex.1980) (Campbell, J. concurring); *Plate & Platter, Inc. v. Wolf*, 780 S.W.2d 453, 456 (Tex.App.—Dallas 1989, writ denied); *Metroflight v. Shaffer*, 581 S.W.2d 704, 707 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.).

165, 167 (Tex.1987). When appellant executed documents and affirmed the *fact* that appellees' liability was not capable of determination, with the intent to later sue for bad faith and claim appellees had no reasonable basis for denying or delaying a claim, his positions are so inconsistent as to constitute manifest injustice. Therefore, we should hold as a matter of law that appellant is barred and estopped from claiming bad faith against appellees'.

By way of supplemental letter, appellant cites this court to *Mroz v. United States Fire Ins. Co.*, 826 S.W.2d 729 (Tex.App.—Houston [14th Dist.] 1992). Mroz collected workmen's compensation benefits for a job related injury pursuant to a settlement agreement between the parties. He then filed a suit against the carriers for the breach of duty of good faith and fair dealing. This court cited *Marino* [4] which held that *res judicata* did not bar subsequent litigation for a cause of action that didn't exist at the time of the first litigation. Neither *Mroz* or *Marino* had the central issue found in this appeal: estoppel based on admissions of fact which precludes subsequent litigation requiring an inconsistent fact. However, *Mroz* in dicta, without citing any authority, also held that "collateral estoppel, judicial admissions and judicial estoppel do not bar appellant's bad faith claim...." I find a clear distinction between res judicata and judicial estoppel or estoppel based on judicial admissions. Each serves an entirely different purpose and has different required elements. Because the language in the opinion was dicta, and not based on any authority or even relevant to the facts of the case, I do not find it controlling.

When Aranda signed the CSA for the proceeding before the IAB, and acknowledged for purposes of receiving benefits that the "liability was indefinite, uncertain and incapable of being satisfactorily established," he is estopped from taking a contrary position in the underlying lawsuit. Therefore, summary judgment was proper

and the judgment of the trial court should be affirmed.

---

4. *Marino v. State Farm Fire & Casualty Ins. Co.,* 787 S.W.2d 948, 950 (Tex.1990).